UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: 12-24405-UU

**FABIO LARA**

    Plaintiff,

vs.

**SPECIALIZED LOAN SERVICING, LLC,**

    Defendant.

_____/

## SLS'S MOTION FOR SUMMARY JUDGMENT

Mr. Lara's entire case rests on the flawed assertion that because his mortgage loan was discharged in bankruptcy, the post-discharge letters sent by Specialized Loan Servicing, LLC (**SLS**) were attempts to collect a debt under the FDCPA and FCCPA.[1] These letters do not demand payment. They expressly state SLS is not attempting to hold Mr. Lara personally liable for his discharged debt. Each letter SLS sent was required by law or contract. Further, SLS informed Mr. Lara that his account reflected a discharged status, and that documentation sent to him was for informational purposes only. Bottom line, the letters were not attempts to collect a discharged debt, and judgment in SLS's favor is warranted.

### I. FACTUAL BACKGROUND

Mr. Lara executed a mortgage in favor of Tamayo Financial Services in the amount of $278,900.00 on June 8, 2006. (SUMF[2] ¶ 1.) The mortgage loan was discharged in bankruptcy on May 13, 2011. (SUMF ¶ 2.) SLS was not a party to the bankruptcy or notified of the bankruptcy

---

[1] "FDCPA" refers to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. "FCCPA" refers to the Florida Consumer Collection Practices Act, FLA. STAT. § 559.72, *et seq*.

[2] "SUMF" refers to the Statement of Undisputed Material Facts filed simultaneously with this motion pursuant to Local Rule 56.1.

{26746397;1} 1

Case 1:12-cv-24405-UU   Document 24   Entered on FLSD Docket 07/19/2013   Page 2 of 11
CASE NO. 12-24405

discharge. (SUMF ¶ 3.)  Although a discharge extinguishes personal liability for the debt, it does not end the relationship between the debtor and creditor because the mortgage still encumbers his property and the creditor still has rights to the collateral:

> Forces remain[] at work that c[an] make … continued ownership of the real estate uncomfortable — forces like accruing real estate taxes and the desirability of maintaining liability insurance for the premises. But those forces are incidents of ownership.  Though the Code provides debtors with a surrender option, it does not force creditors to assume ownership or take possession of collateral. And although the Code provides a discharge of personal liability for debt, it does not discharge the ongoing burdens of owning property.

*Ralph G. Canning, III v. Beneficial Maine, Inc., HSBC Mortgage Services, Inc. (In re: Ralph G. Canning)*,  Case No. 12-9002 (1st Cir. B.A.P., February 1, 2013).  Put another way, Lara's bankruptcy discharge did not insulate him from all future communications from his creditor.

SLS started servicing Mr. Lara's loan in December 2011.  In connection with the service transfer, SLS sent Mr. Lara a "welcome letter" informing him that SLS was his new loan servicer.  (SUMF ¶ 4.)  It also sent him a debt validation letter. (SUMF ¶ 5.)

On January 9, 2012, Mr. Lara notified SLS his loan was discharged in bankruptcy. (SUMF ¶ 6.)  In response, SLS sent Mr. Lara – an attorney – a letter on January 18, 2012 informing him his account reflected a discharged status due to his chapter 7 bankruptcy, and that documentation sent to him was *not* a demand for payment. (SUMF ¶ 7.)

SLS never sent Mr. Lara a monthly billing statement, called Mr. Lara asking him to make a monthly payment, or attempted to hold him personally liable for his debt. (SUMF ¶ 8.) However, SLS did send correspondence in connection with its responsibilities as a loan servicer: **(i)** a contractually required notice of default, a prerequisite to foreclosure (SUMF ¶ 16-17); **(ii)** statutorily required letters informing Mr. Lara about his failure to procure homeowner's and flood insurance (SUMF ¶ 18); **(iii)** contractually required notice about his interest rate

adjustment (SUMF ¶¶ 19-20); **(iv)** and a contractually and statutorily required annual notice about his escrow account balance. (SUMF ¶¶ 21-22.)

The premise of Mr. Lara's lawsuit is simple: he alleges these contractually and statutorily required letters are attempts to collect a discharged debt in violation of 15 U.S.C. § 1692f(1), 15 U.S.C. § 1692e(2), and Fla. Stat. § 559.72(9).  He also asserts a violation of § 1692g for SLS's purported failure to provide a debt validation notice, though he attempted to "withdraw" this claim in a prior filing. (D.E. 14 at 8.)

## II. LEGAL ARGUMENT

### A.    Legal Standard

No circuit court has created a bright-line rule for making a determination of whether a party has made a communication in connection with the collection of a debt.  *Parker v. Midland Credit Mgmt, Inc.*, 874 F. Supp. 2d 1353, 1356 (M.D. Fla. Jun. 15, 2012).  However, courts have consistently looked toward a clear set of factors in making this determination: (i) whether the communication demands payment from the debtor; (ii) whether the communication discusses the specifics of the debtor's underlining debt; and (iii) whether the purpose of the communication is to inform the debtor of the status of his or her loan or possible available loan workout options.

The Court must use a "commonsense inquiry" based on all factors surrounding the communication, including the "purpose and context of the communications" to determine whether it was sent to collect a debt.  *See Gburek v. Litton loan Servicing, LP*, 614 F.3d 380, 384-85 (7th Cir. 2010); *see also Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011) (noting that although an explicit demand for payment is not always necessary for the statute to apply, "the statute does not apply to every communication between a debt collector and a debtor.") (*quoting Grubek*, 614 F.3d at 385).  In other words, to be considered an attempt to

collect a debt, "an animating purpose of the communication must be to induce payment by the debtor." *Grden,* 643 F.3d at 173.

A similar inquiry is used when courts analyze whether correspondence violates the automatic bankruptcy stay provision under 11 U.S.C. § 362(a), which prohibits an entity from taking action "to collect, assess, or recover a claim against the debtor that arose before the commencement of a case." Cases addressing purported violations of the discharge injunction under 11 U.S.C. § 524 are also instructive, as they address whether correspondence constitutes an attempt to collect a discharged debt. What Mr. Lara fails to recognize is that a bankruptcy discharge does not automatically turn every document sent to a debtor into purported debt collection:

> [T]he letters appear to be letters of the type that had to be sent for the lender to be in compliance with state foreclosure law and/or contract law, letters required by federal collection (Fair Debt Collection Practices Act) law and federal law (RESPA) regarding the status of Debtors' escrow account, and letters simply advising Debtors as to the status of the loan. The lender even included a special paragraph regarding bankruptcy in some of the letters to avoid any confusion. The lender could not risk failing to comply with state, federal, and contract law simply because Debtors had stated an intention to surrender the Property. Until the lender completed the foreclosure, it had to comply with applicable law.

*In re: Whitmarsh,* 383 B.R. 735, 736-737 (Bankr. D. Neb. 2008) (letters sent by loan servicer to debtors did not constitute demands for payment or violate the automatic stay).

B.  **Collective Arguments in Support of Summary Judgment**

Before analyzing each document and explaining why it is not an attempt to collect a debt, SLS raises three points that apply universally to each document.

1.  **Language Required by 15 U.S.C. § 1692e(11) is Not Dispositive**

Even though some of the letters state that SLS "is required by law to inform you that this

communication is from a debt collector attempting to collect a debt, and any information obtained will be used for that purpose," the mere inclusion of this sentence has no legal import. *See Lewis v. ACB Business Servs., Inc.*, 135 F.3d 389, 399 (6th Cir. 1998) ("We note that the mere fact that the letter states at the bottom that it 'is an attempt to collect a debt' does not transform the letter into an unlawful demand for payment. On the contrary, such a statement is required by the FDCPA … [and plaintiff] certainly would have called foul had this communication not included this necessary language.)

### 2. FDCPA and FCCPA Arguments Overlap

Second, the arguments expanded below apply to SLS's opposition to the both the FDCPA and the FCCPA causes of action. For purposes of determining what activity constitutes debt collection under the FCCPA, Florida courts adopt interpretations of collection activities under the federal FDCPA. *See* FLA. STAT. § 559.77(5) (when applying the FCCPA, "great weight shall be given to the interpretations of . . . the federal courts relating to the [FDCPA]").

### 3. Bankruptcy Disclaimer Language

Third, the letters at issue clearly state they are not attempts to collect discharged debt:

> Attention to any Customer in Bankruptcy or who has received a bankruptcy discharge of this debt: please be advised that this letter constitutes neither demand for payment of the captioned debt nor a notice of personal liability to any recipient hereof who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code, however, it may be a notice of possible enforcement of our lien against the collateral property, which has not been discharged in your bankruptcy.

(SUMF ¶ 4, 16, 18, 19, 21.) Virtually identical bankruptcy disclaimers appear in every single correspondence sent to Mr. Lara. (*Id.*.) Because Lara had been discharged in bankruptcy the correspondence was not a "demand for payment of the captioned debt."

C.     **Correspondence Did Not Attempt to Collect a Discharged Debt**

With the above points in mind, SLS expands on each letter at issue.

1.     **The Welcome Letter**

The December 22, 2011 correspondence known as a "welcome letter" informs Lara that SLS is the new servicer of his home loan: "It is our pleasure to welcome you as a customer of Specialized Loan Servicing LLC." (SUMF ¶ 4.)  The letter is statutorily required to be sent pursuant to 12 U.S.C. § 2605(b)(1) and Fla. Stat. § 559.715, and contractually mandated by the mortgage contract. (SUMF ¶ 14.)  It is not an attempt to collect a debt.

The letter does not demand payment or discuss specifics of the underlying debt. (SUMF ¶ 10.)  The letter does not identify a principal balance, a monthly payment amount or a deadline to pay. (*Id.*) The "coupon" at the bottom of the first page is informational, and only provides an *estimated* monthly payment amount. (SUMF ¶ 11.) The second page provides general tax and insurance information, and includes the bankruptcy disclaimer. (SUMF ¶ 12.) The last two pages similarly provide information about the transfer of servicing. (SUMF ¶ 13.)

In a recent decision out of the Middle District of Florida, District Judge Moody dismissed a plaintiff's putative class claim, concluding a welcome letter was not an attempt to collect a debt under the FDCPA. *See Parker v. Midland Credit Mgmt., Inc.,* Case No. 8:12-cv-110-T-30TBM at *11 (M.D. Fla. June 15, 2012). While the *Midland* letter expressly disclaimed it was an attempt to collect, the letter was otherwise very similar to that used here:

> The letter did not demand payment or discuss specifics of the underlying debt. And the purpose of the letter was to inform Plaintiff of the assignment of the account to Defendant. … And, although the balance of the debt is stated, the letter does not include terms of payment or deadlines. On its face, it is clearly informational; it informs Plaintiff that her account has been assigned to Defendant and includes the new account number and Defendant's contact information … [T]he letter was not sent in connection with collection of a debt. Any other

> conclusion would defy logic and place debt collectors in an untenable position, where they are subjected to lawsuits, despite their best effort.

(*Id.* at pp. 10-11.)

Several courts have determined a welcome letter does not constitute an attempt to collect a debt. For instance, in *Barton v. Saxon Mortgage Services, Inc., et al.,* Case No. 12-162 at *13-15 (D. Minn., Sept 26, 2012) a plaintiff alleged Saxon violated the FDCPA for attempting to collect a discharged debt by sending a welcome letter after acquiring the servicing of plaintiff's mortgage loan. The Court ruled Saxon did not violate the FDCPA "[b]ecause Saxon was required by law to send the notice of transfer to plaintiff, and because the letter makes clear that if plaintiff had filed for bankruptcy the letter should not be considered an attempt to collect." *Id.* at *15. *See also Pultz v. NovaStar Mortg., Inc. (In re: Pultz)*, 400 B.R. 185, 190-192 (Bankr. D. Md. 2008) (no violation of FDCPA for sending notice of transfer of servicing of the loan); *Connie Paulette Mele v. Bank of America Home Loans (In re: Connie Paulette Mele)*, 486 B.R. 546, 557-558 (Bankr. N.D. Ga. 2013) (service transfer letter which included a specific bankruptcy disclaimer was informational, and "did not constitute an attempt to collect a debt personally from plaintiff.").

   **2.   Debt Validation Letter**

The second document dated December 25, 2011 is a debt validation letter, statutorily required under 15 U.S.C. § 1692g(a). Confusingly, Lara sued SLS in this very lawsuit for *not* sending the letter: "SLS violated 15 U.S.C § 1692g by failing to provide Lara a timely validation notice." (Compl. ¶ 38.) In other words, Lara has sued SLS for sending the correspondence (arguing it is debt collection) and for not sending the letter (arguing it is statutorily required).

The letter does not demand payment or identify an amount to pay by a date certain. (SUMF ¶ 15.) Mr. Lara clearly understood the informational nature of the debt validation letter:

7

he did not send payment to SLS, but instead responded by notifying SLS of his bankruptcy discharge. (SUMF ¶ 7.)

SLS urges this Court to reject Lara's "heads I win, tails you lose" argument and find that the debt validation letter is not an attempt to collect a debt.

### 3. Notice of Default and Notice of Intent to Foreclose

Lara claims the February 1, 2012 documents titled "Notice of Default and Notice of Intent to Accelerate" impermissibly seek to collect a debt discharged in bankruptcy. Pursuant to the mortgage, SLS is required to send him this correspondence. (SUMF ¶ 17). These letters do not demand payment of a debt, but instead notify Mr. Lara the property is subject to foreclosure.

The February 1, 2012 letters complied with the mortgage terms, and this letter is not attempt to collect a debt. *See, e.g. Pultz v. NovaStar Mortg., Inc. (In re Pultz)*, 400 B.R. 185, 190 (Bankr. D. Md. 2008) (dismissing claims under the FDCPA and Maryland Consumer Debt Collect Act where debtor was sent a letter accelerating his loan, noting the mortgage required the acceleration notice in order to foreclose).

In *Eugenia Hasbun v. ReconTrust Company, N.A,*, Case No. 11-15214 (11th Cir. 2013), the plaintiff claimed defendant violated the FDCPA's prohibition against attempting to collect a debt discharged in bankruptcy by sending her a "Notice of Acceleration and Foreclosure" letter. *See Eugenia Hasbun v. ReconTrust Company, N.A.,* Case No. 11-60488-WPD (S.D. Fla. July 7, 2011) (acceleration letter available at Doc. 13-1 at 5.) The 11th Circuit confirmed the correspondence "explicitly informed [plaintiff] that [defendant] was not demanding payment of a debt; instead, it was notifying her that the property was being foreclosed." The court noted *Reese v. Ellis,* 678 F.3d 1211 (11th Cir. 2012), which Lara claims is controlling, is inapposite.

    **4.**     **Fire/Homeowner's Insurance Letter, and Flood Insurance Letter**

The March 10, 2012 letters informing Mr. Lara about the expiration of his fire/homeowner's and flood insurance "cannot plausibly form the basis of an FDCPA suit." *See* Order on Defendant's Motion to Dismiss (D.E. 17 at 5, fn 2). These letters do not demand payment or discuss the specifics of the underlying debt. (SUMF ¶ 18).

Notably, each letter contains a statement at the top stating "THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE." As this Court has correctly recognized, this language is not dispositive of whether a document is *actually* an attempt to collect a debt.

    **5.**     **Notice of Interest Rate and Payment Adjustment**

The March 25, 2012 letter titled "Notice of Interest Rate and Payment Adjustment" is not an attempt to collect a debt. SLS is contractually obligated to send this correspondence to Lara pursuant to the mortgage. (SUMF ¶ 19, 20). It does not contain a demand for payment.

In *Pultz*, a borrower sought damages against his loan servicer and filed an adversary proceeding in which she alleged violations of the automatic stay, and violations of the FDCPA and Maryland Consumer Debt Collection Act. One of the documents at issue was an interest rate adjustment letter, which purported to increase the interest rate on her loan. The court rejected the borrower's claims: "The notice of interest rate adjustment was required by the contract itself, and contained a conspicuous disclaimer that it did not create personal liability because the debtor had filed bankruptcy." *Pultz*, 400 B.R. at 190 (dismissing claims under the FDCPA and Maryland Consumer Debt Collect Act where servicer sent the borrower an interest rate adjustment letter). That is the exact scenario here: the notice of interest rate adjustment is required by the mortgage

contract, and it contains a conspicuous disclaimer that it was not an attempt to hold Mr. Lara personally liable for his discharged debt. (SUMF ¶¶ 19, 20).

Page two of the correspondence confirms it is informational in nature, as the letter merely explains the adjustable rate provision in the loan documents. (*Id.*)

### 6.     Annual Escrow Account Disclosure Statement

The July 14, 2012 escrow account disclosure statement does not demand repayment. *See, e.g., Wexler v. Banc of America Auto Fin. Corp.*, No. 00-C-865, 2000 WL 1230497, at *2 (N.D. Ill. Aug. 25, 2000) (letter that does not demand payment does not qualify as communication in connection with the collection of debt subject to the FDCPA). It was sent in compliance with 12 U.S.C. § 2609(b) and the notice is required by the mortgage. (SUMF ¶¶ 21, 22.)

Lara has no grounds to assert that this document objectively attempts to collect a debt. *See Pultz*, 400 B.R. at 190 (dismissing claims under FDCPA where servicer sent notices concerning escrow overdrafts); *Chase Manhattan Mortgage Corp., v. Padgett,* 268 B.R. 309, 314 (S.D. Fla. 2001) (finding that "while section 352(a) prohibits a mortgagee from exerting pressure on a mortgagor to repay advances, it does not prohibit a mortgagee from merely providing necessary information or notice to a mortgagor of escrow deficiencies.")

### III. CONCLUSION

Mr. Lara did not reference a single instance where SLS sent a collection letter or attempted to collect a discharged debt. SLS never called him asking for money, never sent him any letters asking for money, and expressly informed him that his loan account reflected a discharged status. The correspondence sent to Mr. Lara was required by statute and contract. Not a single document asked for money. All of the documents expressly informed Mr. Lara that because he received a bankruptcy discharge, SLS was not demanding payment or attempting to

hold him personally liable for the debt.  Had SLS not sent these documents, Mr. Lara would have sued anyway, as evidenced by his cause of action against SLS for *not* sending a debt validation letter, while simultaneously suing SLS for sending it.

SLS requests this Court grant summary judgment in its favor on all counts.  SLS further asks the Court to exercise its authority under Rule 11(c) and require Lara and his counsel to show cause why bringing a claim under 1692g did not violate Rule 11(b).

Respectfully submitted,

s/ Eric S. Matthew
William P. Heller
Florida Bar No. 987263
e-mail: william.heller@akerman.com
Jeffrey A. Trinz
Fla. Bar No. 0265683
e-mail: jeffrey.trinz@akerman.com
Eric S. Matthew
Florida Bar No. 0026539
e-mail:  eric.matthew@akerman.com
**AKERMAN SENTERFITT**
One Southeast Third Avenue., 25th Floor
Miami, Florida 33131
305-374-5600 (ph) / 305-374-5095 (fax)

*Counsel for Specialized Loan Servicing, LLC*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 19, 2013, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notice of electronic filing to all counsel of record, including Leo Bueno, Leo Bueno, Attorney, P.A., P.O. Box 141679, Coral Gables, FL 33114-1679.

s/ Eric S. Matthew
Eric S. Matthew