UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 1:12-cv-24405-UU

FABIO LARA,

    Plaintiff,

v.

SPECIALIZED LOAN SERVICING, LLC,

    Defendant.
_____/

## ORDER ON SUMMARY JUDGMENT

THIS CAUSE is before the Court upon Defendant's Motion for Summary Judgment, D.E. 24, filed on July 19, 2013. Plaintiff filed a Response, D.E. 32, and Defendant filed a Reply, D.E. 33. Accordingly, this matter is ripe for disposition.[1]

## BACKGROUND

The following facts are from the record. Much of the background presented herein has already been presented in this Court's prior Order on Motion to Dismiss, D.E. 17. The facts contained herein are undisputed. Moreover, the parties have stipulated that all of the relevant

---

[1] Lara, in its Response, asks the Court to enter summary judgment in *his* favor according to Rule 56(f)(1). However, the Court declines to treat the Response as a cross-motion, since it denies the instant Motion on the grounds that there are genuine issues of material fact for the fact-finder. Although the parties have characterized the question of whether Defendant violated 15 U.S.C. §§ 1692e(2), 1692f(1) and Fla. Stat. § 559.72(9) as a "legal issue," it is ultimately a question of fact, as discussed below. The Court will, in a separate order, enter its findings of fact.

1

facts are contained in the record in the form of the documents described below, and have agreed that "the documents speak for themselves." *See* D.E. 34.

Plaintiff, Fabio Lara, is a resident of Miami-Dade County, Florida. D.E. 9 ¶ 4. Defendant, Specialized Loan Servicing LLC ("SLS"), is a limited liability company with its principal place of business in Highlands Ranch, Colorado. *Id.* ¶ 5. SLS is in the business of collecting debts and servicing loans, for which it makes use of the mails and telephone. *Id.* ¶ 6. On June 8, 2006, Lara signed a home mortgage. D.E. 25-5. On or about May 13, 2011, Lara obtained a personal bankruptcy discharge of this mortgage debt in the United States Bankruptcy Court (Case No. 11-23838-RAM). D.E. 25-2. The Explanation of Bankruptcy Discharge in a Chapter 7 Case states that the discharge prohibits any attempt to collect from the debtor(s) a debt that has been discharged, but adds: "However, a creditor may have a right to enforce a valid lien, such as a mortgage or security interest, against the debtor(s)' property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case. Also, a debtor may voluntarily pay any debt that has been discharged." D.E. 25-2, at 2.

On or about December 16, 2011, SLS became the servicer of Plaintiff's home loan. D.E. 25-4. On or about December 22, 2011, SLS sent Lara a "Welcome to Specialized Loan Servicing, LLC," informing him that the servicing of his loan had been transferred to SLS by Bank of America. D.E. 25-4. At the time it began servicing Plaintiff's home loan, the loan was in default and the subject of a pending foreclosure proceeding (Case No. 2008-33718 CA 01, Eleventh Judicial Circuit Court). D.E. 1 ¶ 14. On December 25, 2011, SLS sent Plaintiff another letter informing Plaintiff that his "Total Debt" was $431,036.09. D.E. 25-5. On or about January 9, 2012, Lara put Plaintiff on notice that the subject loan had been discharged in bankruptcy.

2

D.E. 25-6. In a letter dated January 18, 2012, SLS sent Lara a letter acknowledging his notice of discharge, stating: "We have updated the account to reflect a Discharged status due to the Chapter 7 Bankruptcy." D.E. 25-7. It also stated: "In our compliance with the Automatic Stay we have marked the account to prevent sending monthly bills." *Id.*

On or about February 1, 2012, SLS sent Plaintiff another letter titled "Notice of Default and Notice of Intent to Foreclose." D.E. 25-8. The Notice stated: "Failure to pay the total amount due under the terms and conditions of your Deed of Trust/Mortgage by 03/05/12 may result in acceleration of the entire balance outstanding under the Note including, but not limited to, the principal, interest and all other outstanding charges and costs, and commencement of foreclosure of the Trust Deed/Mortgage which is security for your Note." D.E. 25-8, at 1. The second page of the Notice makes a number of recitations in "accordance with the Fair Debt Collection Practices Act," including the following: "Although you are not required to pay the total debt (or balance) of the Account prior to its maturity or acceleration, federal law requires [SLS] to provide you with the amount of the Debt. As of 02/01/12, the amount of the unpaid principal balance is $278,900.00." *Id.* at 2.

In a letter dated May 25, 2012, SLS sent Lara a letter titled "Notice of Interest Rate and Payment Adjustment." D.E. 25-10. The letter informs Lara of certain interest rate and payment adjustments. It lists "07/01/12" as the "rate effective date," and "08/01/12" as the "new payment effective date." The principal balance is listed as $275,660.35. It states: "The principal balance is projected on the assumption that the scheduled payments will be paid." D.E. 25-10, at 1.

On or about July 24, 2012, SLS sent Plaintiff another letter, titled "Escrow Account Disclosure Statement." D.E. 25-11. The letter informed him that his escrow account had a

$3,431.80 "shortage amount." At the bottom of the letter's first page, in the detachable "coupon" section, the letter states: "YOUR SHORTAGE AMOUNT SHOULD BE REMITTED WITH THIS COUPON ONLY." *Id.*, at 1.

Following the above-discussed correspondence, Plaintiff brought this action for actual and statutory damages pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, as well as for actual, statutory, and punitive damages pursuant to the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.55, along with a prayer for injunctive relief under the same. The parties stipulate, in accordance with Florida case law, that Plaintiff's FCCPA claim "stands or falls on the Court's ruling on the FDCPA claim." D.E. 34 ¶ 3.

## LEGAL STANDARD

Summary judgment is authorized only when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. When determining whether the moving party has met this burden, the Court must view the evidence and all factual inferences in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Rojas v. Florida*, 285 F.3d 1339, 1341-42 (11th Cir. 2002).

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of proving that no genuine issue of material fact exists, the non-moving party must make a showing sufficient to establish the existence of an essential element of that party's case and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrell*, 477 U.S. 317 (1986); *Poole v. Country Club of Columbus, Inc.*, 129

F.3d 551, 553 (11th Cir. 1997); *Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir. 1989).

If the record presents factual issues, the Court must not decide them; it must deny the motion and proceed to trial. *Envntl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981).[2] Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co. v. Cont'l Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969). If reasonable minds might differ on the inferences arising from undisputed facts, then the Court should deny summary judgment. *Impossible Elec. Techniques, Inc. v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[T]he dispute about a material fact is 'genuine,' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

Moreover, the party opposing a motion for summary judgment need not respond to it with evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes*, 398 U.S. at 160. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or are not otherwise in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611-12 (5th Cir. 1967). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 255.

---

[2] Decisions of the United States Court of Appeals for the Fifth Circuit entered before October 1, 1981, are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).

## DISCUSSION

Defendant moves for summary judgment on the grounds that its communications with Plaintiff were not sent with the intent to collect a debt, but were notices that Defendant was obligated to send Plaintiff in connection with Plaintiff's home mortgage. Plaintiff maintains that Defendants' notices violated two provisions of the FDCPA. The first provision prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including misrepresentations as to the "legal status of any debt." 15 U.S.C. § 1692e(2)(A). The second prohibits "unfair or unconscionable means to collect or attempt to collect any debt," including "collection of any amount . . . [not] permitted by law." 15 U.S.C. § 1692f(1). For the reasons set forth below, the Court denies Defendant's Motion.

For the FDCPA to apply, two threshold criteria must be met: (1) the defendant must qualify as a "debt collector"; and (2) the communication must have been made "in connection with the collection of any debt." *Parker v. Midland Credit Mgmt., Inc.*, 874 F. Supp. 2d 1353, 1355 (M.D. Fla. 2012). Defendant does not dispute that it is a debt collector, but does dispute that any of the correspondence constituted an attempt to collect debt. If the FDCPA does apply, then it is for the fact-finder to decide whether the correspondence constituted an unfair attempt to collect an amount not permitted by law, § 1692f(1), or a false representation of the legal status of the debt, § 1692e(2)(A), as Plaintiff alleges. This factual question is answered according to the objective "least sophisticated consumer" standard. *See Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir. 1985). That is, whether the least sophisticated consumer would find the communication to be false, deceptive, or misleading. Where the parties reasonably disagree on the proper inferences that can be drawn from the debt collector's letter, resolution is for the trier

of fact – not for the court on summary judgment. *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1197 (11th Cir. 2010).

### A. Initial communications

Contrary to Plaintiff's position, not every communication "made in connection with the collection" of a debt will trigger an FDCPA violation simply by virtue of the debt having been discharged. Certain communications made in accordance with federal law may not support an FDCPA claim. In this case, Defendant was required by a provision of the FDCPA itself, 15 U.S.C. § 1692g, to send the Validation Letter of December 25, 2011, stating: (1) the amount of the debt; (2) the name of the creditor to which the debt is owed; (3) the consumer's ability to dispute the debt within thirty days; (4) the protocol for addressing the debt dispute; and (5) the protocol for disclosing the identity of original creditor, if different from current creditor. *See* § 1692g(1)-(5). Section 1692g "serves to obviate the need for litigation except where a debt collector has behaved knowingly, or at least recklessly, in violation of the statute." *Lindberg v. Transworld Sys., Inc.*, 846 F. Supp. 175, 179 (D. Conn. 1994) (Cabranes, D.J.). However, the Validation Letter goes beyond these statutory requirements in various ways. For example, it includes a "Next Payment Due Date" and otherwise contains features that the least sophisticated consumer might associate with a bill. Therefore, there is a question of fact as to whether the letter constitutes an unfair collection or misrepresentation of the debt's legal status.

The Welcome Letter of December 22, 2011, sent prior to the statutorily-required Validation Letter, serves much the same purpose, and provides Plaintiff with information regarding the relationship between purported debtor and debt collector. Defendant, again, argues that it is required to mail this letter by statute – this time 12 U.S.C. § 2605(b)(1). That provision

makes substantially similar demands on debt collectors, and additionally requires certain disclosures with respect to the relationship between the loan debt and the security interest. Again, Defendant goes beyond the requirements of the relevant statute by including with its Welcome Letter a mail-in stub with payment instructions. Therefore, there is a question of fact as to whether this letter also constitutes an unfair collection or misrepresentation of the debt's legal status.

On January 9, 2012, Plaintiff informed Defendant that the subject debt had been discharged, and asked that they refrain from further communicating with him. On January 18, 2012, Defendant signed a letter to Plaintiff acknowledging Plaintiff's discharge status, and stated that the account would be marked to prevent sending monthly bills. No monthly bills were sent after that date, but monthly bills are not the only means of attempting to collect a discharged debt or of misrepresenting a debt's legal status. Two of Defendant's subsequent communications would do just that.

### B. Foreclosure notice

Defendant's "Notice of Default and Notice of Intent to Foreclose" does more than give notice of an imminent foreclosure, and a fact-finder could reasonably find that the letter attempted to misrepresent the debt's legal status or unfairly collect an amount not permitted by law. As explained by the Eleventh Circuit: "Even if . . . [defendant] intended the letter and documents to give the [plaintiff] notice of the foreclosure, they also could have—and did—demand payment on the underlying debt." *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1217 (11th Cir. 2012). The FDCPA draws a distinction between general debt collection and enforcement of a security interest. *Kaltenbach v. Richards*, 464 F.3d 524, 527 n.3 (5th Cir. 2006).

A home loan is a "debt" even if it is secured.  *Reese,* 678 F.3d at 1218, *accord Maynard v. Cannon*, 401 F. App'x 389, 394 (10th Cir. 2010); *Wilson v. Draper & Goldberg, P.L.L.C.*, 493 F.3d 373, 376 (4th Cir. 2006).  A communication related to debt collection does not become unrelated to debt collection simply because it also relates to the enforcement of a security interest, and thus a debt collector's communication may render it liable under the FDCPA even if another one of its functions is to enforce a security interest.  *Reese,* 678 F.3d at 1218.

Defendant argues that its Notice is merely a communication it must issue in connection with the enforcement of a security interest (*i.e.*, foreclosure), and is therefore substantially similar to the letter at issue in the unpublished opinion of *Hasbun v. Reconstruct Co.*, 508 F. App'x 941 (11th Cir. 2013).  But actually the letter is much more like the one at issue in *Birster v. American Home Mortgage Servicing, Inc.*, 481 F. App'x 579 (11th Cir. 2012).  The letter in *Hasbun* ("Notice of Acceleration and Foreclosure"), unlike the Defendant's Notice, informs the mortgagor that a notice of sale *will* be published, and that foreclosure proceedings *will* be instituted.  *Hasbun v. Reconstruct Co.*, No. 11-60488 (S.D. Fla. July 7, 2011) (Dkt. Entry 13-1).  The letter does not state the unsatisfied principal amount or ask that the mortgagee pay this amount by a date certain. In contrast, Defendant's letter ("Notice of Default and Notice of Intent to Foreclose") states the "amount required to cure the arrears," goes on to "urge [mortgagor] to immediately . . . contact [debt collector] . . . to obtain the updated amount required to reinstate your loan," and informs Plaintiff that he has "thirty-three (33) calendar days from the date of this letter to cure the default." D.E. 25-8, at 1.  This is akin to the letter at issue in *Birster*, in which the debt collector advised plaintiffs that their home would be foreclosed unless they cured their default by paying a sum certain within thirty days.  *Birster*, 481 F. App'x at 583.  The appellate court there held that the

debt collector could be liable under the FDCPA even though it was also enforcing a security interest. *Id.* This Court likewise holds that, under the least sophisticated consumer standard, Defendant could be held liable for its Notice of Default and Intent to Foreclose.

### C. Interest rate notice

A reasonable fact-finder could find that Defendant's "Notice of Interest Rate and Payment Adjustment" was an improper attempt to collect Plaintiff's discharged debt. Defendant argues that it was "required" to send the Notice under the terms of the loan document. But communications required by loan terms are not afforded the same protection as those required by the FDCPA itself. The debt underlying the subject loan was, after all, discharged in bankruptcy. The Notice informed Plaintiff not only of the loan's adjustable interest rate, but also of the loan's principal balance and the new payment effective date. The Court therefore holds that, under the least sophisticated consumer standard, Defendant could be held liable for its Notice of Interest Rate and Payment Adjustment.

### D. Escrow account disclosure

A reasonable fact-finder could draw different inferences from Defendant's Annual Escrow Account Disclosure Statement. The Annual Escrow Account Disclosure Statement was sent in accordance with the Real Estate Settlement Procedures Act ("RESPA"), which provides that if a federally related mortgage loan requires the mortgagor to make payments to the mortgagee for deposit into an escrow account for the payment of taxes and insurance premiums, "the servicer shall notify the borrower not less than annually of any shortage of funds in the escrow account." 12 U .S.C. § 2609(b). One inference that could be drawn from the Statement is that the associated mortgage debt is still collectable. The Statement does contain the following warning: "PLEASE

REVIEW THIS STATEMENT CLOSELY - YOUR MORTGAGE PAYMENT MAY BE AFFECTED." D.E. 25-11, at 1.  Because one reasonable inference could support a finding of liability under the FDCPA, Defendant's liability may not be precluded on summary judgment.

For all the foregoing reasons, it is

ORDERED AND ADJUDGED that Defendant's Motion, D.E. 24, is DENIED.

DONE AND ORDERED in Miami, Florida, this _5th_ day of September, 2013.

DONE AND ORDERED in Chambers, in Miami, Florida this ___ day of June, 2012.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

cc: Counsel of Record